# AFFIDAVIT OF
# IMMIGRATION & CUSTOMS ENFORCEMENT
# SENIOR SPECIAL AGENT THOMAS GUASTINI

I, Thomas Guastini, being duly sworn, depose and say: 1:06 MJ 3118

1. I am a Senior Special Agent with Immigration & Customs Enforcement (ICE), Department of Homeland Security, with over 19 years of Federal Law Enforcement experience. I am currently assigned to the office of the Assistant Special Agent in Charge (ASAC), Cleveland, Ohio. Based upon my personal observation, consultation with other Agents and witnesses, and review of the records, I have learned the following facts:

2. The information set forth in this affidavit is based upon my knowledge and investigation. This affidavit does not contain every fact that I have learned during the course of the investigation, but instead has included only those facts which I believe establish the requisite probable cause. I know it is a violation of Title 18, United States Code, Section 1546(a) for a person, under oath or penalty of perjury, to knowingly subscribe as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly present any such application, affidavit, or other document which contained any such false statement or which failed to contain any reasonable basis in law or fact.

3. Records submitted to US Immigration authorities establish that, Ratko MASLENJAK, a citizen of Bosnia-Herzegovina (BiH), born on April 24, 1959, the son of Ranko, entered the United States as a Refugee through the Port of New York City, NY on September 28, 2000. MASLENJAK presently lives in Akron, Ohio.

4. Your affiant has learned the following: The former country of the Socialist Federal Republic of Yugoslavia (SFRY) began to disintegrate in mid-1991. The Republic of Bosnia and Herzegovina, then part of the SFRY, declared independence in early 1992, and soon afterwards, armed conflict broke out among the three main ethnic groups which made up Bosnia and Herzegovina. Most of the conflict centered on the two largest ethnic populations, the Bosnian Muslims (who were the majority) and the Bosnian Serbs. In April 1992, the Bosnian Serbs began a widespread campaign to force Bosnian Muslim and Bosnian Croats from territories under their control. The Bosnian Serbs created a state (naming it the Republika Srpska), a government, and organized their armed forces into what was known as the Army of the Republika Srpska (hereinafter known as the VRS). In July 1995, military units of the VRS Drina Corps, to include the 5th Company, 1st Battalion

Bratunac Brigade, were part of a campaign to capture the United Nations safe-area of Srebrenica.

5. Further, your affiant has learned the following: In one of the final chapters of the 1992-1995 conflict in Bosnia, military and police forces of the Bosnian Serb entity, the Republika Srpska, captured the UN designated safe-area of Srebrenica in July 1995. In the seven days following the capture of this safe-area, approximately 3000-4000 Bosnian Muslim men and boys, generally between the ages of 15-65 were murdered in a series of well organized and planned mass-executions. Another 500-1000 men and boys were murdered in dozens of smaller executions. Another 25-35,000 Bosnian Muslim women, children and mostly elderly men were forcibly transferred in violation of international law from the environs of the safe-area to the demarcation line between the two warring entities, and forced out of the territory of the Republika Srpska.

6. The International Criminal Tribunal for the Former Yugoslavia (ICTY) which was established in 1993 by the UN Security Council to investigate and punish senior officials responsible for crimes then occurring in the war, began its own investigation into the events surrounding the executions which followed the fall of the Srebrenica safe-area in August 1995. The resulting investigation, which remains ongoing today, has resulted in a number of trials and convictions for individuals associated with these acts. During their investigation they obtained numerous official military documents listing individuals who served in the VRS.

7. In April 2006, your affiant received copies of a military attendance roster of the Army of the Republika Srpska (VRS), Military Post 7042 from January 1995 to November 1995. Listed as belonging to the Army is Ratko MASLENJAK.

8. The VRS commonly used the first name of the soldier's father to further identify the soldier in various military lists and documents.

9. MASLENJAK's name is specifically listed as "MASLENJAK RANKA RATKO", where Ranka is his father's first name. It lists MASLENJAK's rank as Lieutenant and his military ID number as 1092. His unit affiliation is listed as the 1st Battalion, 5th Company.

10. The ICTY provided an order from the Drina Corps Command dated March 17, 1995; the subject was the transfer of new uniforms to the participants of the Training Seminar for Company Commanders, Bratunac 1st Infantry Brigade. One of the persons to receive new uniforms was Sergeant Ratko MASLENJAK.

11. The ICTY provided a list of Reserve Forces dated March 29, 1995. Included on the list is MASLENJAK Ranko Ratko, DOB: May 24, 1959, Electrician.

2

12. Another form the ICTY provided was a promotion letter dated September 23, 1995 from the Drina Corps Command stating promotion of non-commissioned officers in times of war, Sergeant in the reserve is MASLENJAK Ranko RATKO, born on 04/24/1959 who was promoted to Second Lieutenant.

13. ICTY provided for documents showing a list of Non Commissioned officers in the Reserve in the 1st Bratunac Battalion. Included on the list is MASLENJAK Ranko RATKO, Sergeant, VES of 21801, Citizenship number 2404959190101, Born April 24, 1959 in Zenica, High School Electrician, Date of VES August 10, 1992, Date of last promotion, Drina Corps Commander 05/2/144 from 04/10/1994, current duties, Company Commander in the 1st Infantry Battalion.

14. ICTY provided a memorandum from the Army Headquarters of Republika Srpska dated December 1, 1995 stating at the Commanders Staff meeting they decided to not promote Sergeant MASLENJAK Ratko Ranko.

15. To apply and receive the status of a Refugee to enter the United States, MASLENJAK was required to fill out certain US Government documents. One of the documents MASLENJAK completed was a Form I-590, Registration for Classification as Refugee. The I-590 was signed by MASLENJAK on January 30, 1998 and was sworn to and signed again on April 22, 1998 before an Immigration Officer at the U.S. Embassy in Belgrade, Yugoslavia, approving his refugee status.

16. MASLENJAK swore on the I-590 that the only military service he participated in was compulsory time as a private assigned to communications in the Yugoslavian Military from 1979 to 1980.

17. MASLENJAK stated on the I-590 he received a high school diploma as an electrical technician.

18. MASLENJAK, stated under penalty of perjury, on the I-590 that he was never a member of a political, professional or social organization, failing to disclose his participation in the VRS.

19. MASLENJAK, stated under penalty of perjury, on the I-590 that he fled Bosnia on August 2, 1992.

20. MASLENJAK provided his birth certificate where it showed that his father is Ranko MASLENJAK. Your affiant has learned that Ranka is a derivative of Ranko, meaning "son of Ranko."

21. On August 12, 2002 the Immigration and Naturalization Service received an Application to Register Permanent Residence or Adjust Status, Form I-485, from Ratko MASLENJAK. The applicant was directed by the form to: "List your present and past membership in or affiliation with every political

3

organization, association, fund, foundation, party, club, society, or similar group in the United States or any other place since your 16th birthday. Include any foreign military service in this part. If none, write 'none'. Include the name of organization, location, dates of membership from and to, and the nature of the organization." In response to that directive, MASLENJAK wrote "Yugoslavian Army 1979/1980."

22. MASLENJAK answered "no" to the following question: "Are you under a final order of civil penalty for violating section 274C of the Immigration and Nationality Act for use of fraudulent documents or have you, by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the U.S. or any immigration benefit?"

23. Under penalty of perjury MASLENJAK signed Form I-485 on June 27, 2002. Patricia Barger of the International Institute, assisted MASLENJAK with the preparation and completion of the forms at her offices located in Akron, OH.

24. Your affiant has learned that Immigration and Customs Enforcement, and its predecessor, Immigration and naturalization Service, consider the failure to list the participation in the Republika Srpska Army as a material omission of fact for both purposes of determining whether an applicant should be accorded refugee status and whether an applicant should be allowed to adjust his status to that of a lawful permanent resident alien.

25. In a biographic application document attached to form I-485 MASLENJAK stated his last occupation in Bosnia was as an electrician.

26. Following approval of his application on, August 20, 2004, MASLENJAK presented himself to the Citizenship and Immigration Services in Cleveland, Ohio to get fingerprinted for this I-551, Permanent Resident Card.

27. On September 8, 2004 the fingerprint card of MASLENJAK was accepted by Citizenship and Immigration Services.

28. On December 5, 2006 your affiant along with ICE Senior Special Agent (SSA) Boris Baburich, interviewed MASLENJAK at his residence. The interview took place in MASLENJAK's native language, Serbo-Croatian. SSA Baburich is fluent in Serbo-Croatian.

29. SSA Baburich read MASLENJAK his Miranda rights from a pre-printed form which is written in the Serbo-Croatian language. MASLENJAK acknowledged an understanding of his rights and stated he was willing to speak to the agents without an attorney present.

30. MASLENJAK was shown the roster of soldiers assigned to the 5th Company, 1st Battalion of the Bratunac Brigade. He acknowledged his name on the roster but said he did not know how it got there.

31. MASLENJAK was shown the other documents provided by the ICTY that listed him as a member of the VRS Army. After reviewing them for several moments he admitted serving in the reserves for two years achieving the final rank of sergeant. He said his duty was to "hold the line."

32. MASLENJAK admitted he failed to list his service in the VRS Army when completing the refugee documentation.

33. Based on the foregoing, I believe that probable cause exists, that on April 22, 1998, MASLENJAK knowingly made under oath and subscribed as true a false statement with respect to a material fact on Form I-590 (Registration for Classification as Refugee), a document required by the immigration laws of the United States, by omitting and failing to disclose his military service in the 5th Company, 1st Battalion of the Bratunac Brigade of the Republika Srpska in violation of Title 18, United States Code, Section 1546(a). Moreover, I believe that probable cause exists, that on or about June 27, 2002, in the Northern District of Ohio, MASLENJAK knowingly certified under penalty of perjury and subscribed as true a false statement with respect to a material fact on Form I-485 (Application to Register Permanent Resident or Adjust Status), a document required by the immigration laws of the United States, by omitting and failing to disclose his military service in the 5th Company, 1st Battalion of the Bratunac Brigade all in violation of Title 18, United States Code, Section 1546(a).

_____
Thomas Guastini
Senior Special Agent
Immigration and Customs Enforcement

Sworn to before me and subscribed to in
My presence this 12th day of December, 2006.

_____
United States Magistrate Judge